IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2017 JUN -9  P 1: 36
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| JENNIFER AKRIDGE, | ) |
| Plaintiff, | ) CASE NO. 2:17-CV-372 |
| v. | ) |
| | ) JURY TRIAL REQUESTED |
| ALFA INSURANCE COMPANIES, | ) |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Jennifer Akridge, by and through her undersigned counsel of record, and hereby doth complain against the above-named Defendant, as set forth herein-below.

### I. JURISDICTION & VENUE

1.      Plaintiff Akridge files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Act of Congress known as Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act, 42 U.S.C. 1981(a), 42 U.S.C. § 1201, et seq., and the Americans with Disabilities Act ("ADA") and the Vocational Rehabilitation Act to obtain equitable relief, the costs of suit, including reasonable attorneys' fees, and damages suffered by the Plaintiff, due to the Defendant's discrimination against Plaintiff.

2.      Plaintiff Akridge filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") in Birmingham on December 14, 2016, which was stamped "received" by the EEOC on December 20, 2016. Plaintiff expects to receive a right-to-sue, which will give Plaintiff the right to pursue an Americans with

1

Disabilities Act claim for 90 days after her receipt. Plaintiff intends to amend her complaint to include the disability charge upon receipt of the right-to-sue. However, no right-to-sue is required for an action pursued under the Vocational Rehabilitation Act.

3. Venue is proper in the Middle Division of the Middle District of Alabama, since the alleged discriminating action of Defendant occurred in Montgomery County, Alabama.

## II. PARTIES

4. The named Plaintiff, Jennifer Akridge (hereinafter "Plaintiff" or "Plaintiff Akridge"), is a citizen of the United States and a resident of Montgomery, Alabama. Plaintiff is over the age of nineteen years.

5. The Defendant, Alfa Insurance Companies (hereinafter "Defendant" or "Alfa"), is insurance company doing business in the State of Alabama and Montgomery County, Alabama. At all times relevant to this complaint, Plaintiff was employed, and continues to be employed, by Defendant.

## III. STATEMENT OF FACTS

6. Ms. Akridge is a forty-eight-year-old female of Caucasian descent. Ms. Akridge was first hired by Alfa on or about April 1989 as an agency clerk. On or about 1991, Ms. Akridge was promoted to the Auto Underwriting Department, and has occupied numerous promotions with the department, ever since reaching management capacity on or about January 1998.

7. Ms. Akridge avers that, during her employment at Alfa, she received excellent evaluations every year since 1992. Ms. Akridge further avers that she was named "Employee of the Year" in 1995 for the entire company.

8. Ms. Akridge avers that, despite her excellent evaluations, she has suffered certain physical health problems, which were widely known to Alfa and its management. On or about January 1993, Ms. Akridge became sick at work and was taken to the Emergency Room where she was diagnosed with Multiple Sclerosis (hereinafter "M.S."). Ms. Akridge was then hospitalized for approximately 5-6 days. Immediately upon her return to work at Alfa, Ms. Akridge filed for short term disability, and was out of work for approximately ten (10) weeks.

9. Ms. Akridge avers that, at that time, Alfa's Human Resource staff, including Marcia Martin, HR Vice President; Goodwin Myrick, President; Phil Richardson, Executive Vice President; Ken Wallis, Legal Counsel; Bill Oswalt, Vice President of Underwriting; and Jane Adams, Vice President of Auto; were all informed of, and aware of, Ms. Akridge's M.S. diagnosis. Ms. Akridge further avers that many other Alfa employees were aware of her condition when she returned from leave, because she used a walker when she returned to work.

10. Ms. Akridge avers that, notwithstanding her M.S. diagnosis, she was fully able to perform the necessary functions and duties of her job.

11. On or about January 2001, and again in March 2003, Ms. Akridge had to go on short term disability for migraine headaches, which is a symptom of M.S. Nonetheless, Ms. Akridge remained able to perform all the necessary duties of her job. Ms. Akridge avers that her two senior managers, Ms. Gail Pelt and Ms. Pat Morris, were well aware of her condition.

12. Ms. Akridge avers that since March 2003, she has taken additional paid time off intermittently, but has still been able to keep up with all her job responsibilities, even when it required taking much work home.

13. On or about February 2016, Bob Plaster became Ms. Akridge's supervisor. Ms. Akridge asked Mr. Plaster if he were aware of her M.S. and migraines. Mr. Plaster said he remembered Ms. Akridge being sick many years ago, but claimed he was not previously aware of her migraines. Ms. Akridge avers that after that time, Mr. Plaster was aware that she suffered from M.S. and migraines.

14. Ms. Akridge further avers that she informed Senior Vice President of Underwriting Tommy Coshatt (Plaster's supervisor) about her M.S. and migraines in 2015.

15. Ms. Akridge avers that it was well-known throughout Alfa that she suffered from M.S. and migraines.

16. Ms. Akridge avers that Alfa self-insures its employees' health insurance. As a result, Ms. Akridge's health insurance costs were born by Alfa, including shots needed for MS that cost her insurance policy as much as $11,000.00 per month. Ms. Akridge is not currently taking such shots, but is taking a new and less expensive pill. However, once a special program for said medication ends, Ms. Akridge's costs will accelerate to $10,000.00 per month.

17. On or about December 2, 2016, Mr. Plaster and Mr. Coshatt informed Ms. Akridge that Alfa was looking to "cut costs" and that Akridge "was one of those costs." As a result, Ms. Akridge was terminated from her position with Alfa.

18. Ms. Akridge avers that she was terminated because of her disabilities of M.S. and migraines and/or that Alfa perceived that she (Ms. Akridge) was disabled and not fully able to perform the necessary duties and functions of her job, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and the Vocational Rehabilitation Act, 29 U.S.C. § 701, et seq. In addition, her termination will have a significant downward impact on the retirement plan she previously had with Alfa.

19. As a result of this illegal termination, Ms. Akridge avers that she has lost income and health insurance, which will cost her even more money in the future. Ms. Akridge also avers that she is experiencing severe mental anguish and has incurred the cost of attorney's fees.

20. Ms. Akridge avers that Alfa's so-called cost saving reason for her termination is pretextual, because Alfa recently promoted, at great additional cost, its Legal Counsel, Angie Bradwell, to the position of Executive Vice President. In addition, Alfa promoted Scott Forrest from Vice President of Human Resources to Executive Vice President of Human Resources. This, too, will result in an increased salary and bonus costs.

21. Ms. Akridge avers that further proof of pretext on the part of Alfa's reason for her termination (namely that Alfa was "looking to cut costs" and that Akridge "was one of those costs"), as opposed to disability discrimination, is that the following additional Alfa employees have been promoted since November 2016, at a significant cost increase in salary to Alfa.

(a) Cleatus McGee, from MIS Manager to Director of IT;

(b) Danny Martin, from Manager to Director of Auditing; and

  (c)  Craig Venable, from Vice President to Senior Vice President of Auditing.

22. Ms. Akridge avers that no one else at Alfa has been eliminated at Alfa since her position was eliminated at Alfa, thus again reflecting the pretextual nature of the cost-cutting excuse for Ms. Akridge's termination.

23. Ms. Akridge also avers that another recent issue at Alfa reflecting on pretext was that a large group of agents unethically created new policies and received agent commissions therefrom. An audit discovered this problem and Alfa made the agents pay back the overcharging commissions for the past year (leaving untouched other such commissions from previous years), yet none of these agents were terminated for their wrongdoing, or to save money.

## IV. PLAINTIFF AKRIDGE'S CAUSE OF ACTION

**DISABILITY DISCRIMINATION UNDER THE VOCATIONAL REHABILITATION ACT**

24. Ms. Akridge repeats, realleges, and incorporates by reference paragraphs 1 through 23 above, the same as if more fully set forth herein and further avers that Alfa's discrimination against her, due to her disability, or Alfa's incorrect perception of a disability on the part of Ms. Akridge, violated the Vocational Rehabilitation Act, 29 U.S.C. § 701, et seq., prohibiting disability discrimination.

25. Ms. Akridge has lost wages and benefits, and suffered extreme mental anguish as a result of Defendant's discrimination against her. Ms. Akridge will lose considerably more wages and benefits in the future.

26. Ms. Akridge avers that she has pursued her administrative remedies with the EEOC and expects to soon receive a right-to-sue letter from the EEOC giving her a limited 90-day window of time to file a lawsuit.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

a) Judgment declaring Plaintiff Akridge was discriminated against by the Defendant Alfa, due to her disability, or due to the incorrect perception of the Defendant that Plaintiff was so disabled that she was unable to perform the necessary duties and functions of her job, or due to the cost of maintaining Plaintiff as an employee due to her health insurance costs.

b) An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

c) An award of punitive damages;

d) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief; and

e) Such further, other and different relief as the Court may deem appropriate and necessary.

Respectfully submitted this 9th day of June, 2017.

Jennifer Akridge, Plaintiff

Julian McPhillips (ASB-3744-L74J)

_____
Chase Estes (ASB-1089-F44L)


**OF COUNSEL:**
**MCPHILLIPS SHINBAUM, L.L.P.**
516 South Perry Street
Montgomery, Alabama 36104
(334) 262-1911
(334) 263-2321      FAX
julianmcphillips@msg-lawfirm.com
cestes@msg-lawfirm.com

## JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

_____
OF COUNSEL