IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JENNIFER AKRIDGE,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        CASE NO. 2:17cv372-GMB
                                     )        [wo]
ALFA MUTUAL INSURANCE                )
COMPANY,                             )
                                     )
        Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Now before the court are a Motion for Summary Judgment (Docs. 76 & 126) and a

and a Motion to Strike (Doc. 134) filed by Defendant Alfa Mutual Insurance Company

("Alfa").[1]

Jennifer Akridge filed this lawsuit on June 9, 2017 and amended her complaint on

July 31, 2017. Doc. 15.  She brings a single count which includes allegations both of the

denial of reasonable accommodation and disability discrimination in violation of the

Americans with Disabilities Act ("ADA").  Pursuant to 28 U.S.C. § 636(c) and Federal

Rule of Civil Procedure 73, the parties have consented to the jurisdiction of the undersigned

United States Magistrate Judge. Docs. 20 & 21.  After careful consideration of the parties'

submissions and the applicable law, and for reasons discussed below, the motion for

summary judgment is due to be GRANTED and the Motion to Strike is due to be

GRANTED in part and DENIED in part.

---

[1] Also pending is a Renewed Motion to Take Scott Forrest's Deposition. Doc. 127.  While Akridge refers
to a request to take Forrest's deposition in her opposition to summary judgment, she does not invoke Rule
56(d) or comply with its requirements.  This motion will be resolved by separate order.

# I.    JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

# II.    FACTS

The facts viewed in a light most favorable to the nonmovant are as follows:

Akridge began working with Alfa in 1989. Her position was eliminated in December 2016. At the time her employment ended, Akridge was working in the Underwriting Department as a Strategic Underwriting Administrator. At the time her employment was terminated, Akridge was supervised by Bob Plaster, the Director of Underwriting Services. Plaster reported to Beth Chancey, the Vice President of the Property, Commercial, and Automobile underwriting department.

Akridge received excellent evaluations during her employment with Alfa and was named its "Employee of the Year" in 1995. In January 1993, Akridge was diagnosed with Multiple Sclerosis ("M.S."). Akridge states in an affidavit that various Human Resources employees and Alfa executives were aware of her condition and that her physical limitations were apparent because she used a walker for one year. Doc. 129-1 at ¶ 4. Akridge presents evidence that Plaster was aware of her condition (Doc. 129-1 at ¶ 7), and that Chancey had heard she had M.S. and knew that she had migraine headaches in connection with that condition. Doc. 78-4 at 12:13–13:8.[2] The Senior Vice President of

---

[2] Citations to depositions are to the CM/ECF document number and the internal deposition page number.

Underwriting, Tommy Coshatt, testified in his deposition that he is aware that Akridge had migraine headaches but he does not recall having any conversation about M.S. Doc. 78-3 at 110:15–111:6. Akridge explains that due to her M.S. she suffers from migraine headaches and cannot sit for long periods of time. Akridge presents evidences that her medications cost ten to twelve thousand dollars per month and that this cost was paid by Alfa, which was self-insured, during her employment. Doc. 129-1 at ¶ 8.

Alfa underwent a corporate reorganization in 2015. Alfa also implemented a new computer system called Guidewire and other computer programs that allowed for the automation of some tasks. Doc. 78-3 at 36:8–21. Coshatt states in his deposition that Alfa's focus in installing the new system was to increase operational efficiency in the property and casualty underwriting department by leveraging any potential for automation. Doc. 78-3 at 119:9–21. As a result of this process, Coshatt, Chancey, and Plaster made the decision to eliminate Akridge's position. Doc. 78-4 at 69:2–6. Coshatt testified that the responsibilities of Akridge's position were no longer needed, so Alfa eliminated her position. Doc. 78-3 at 113:11–14. The position responsibilities were no longer needed because they had been automated or absorbed into other areas. Doc. 78-3 at 33:3–7 & 116:13–17.

Akridge presents evidence in an attempt to show that the real reason for her termination was the cost to Alfa of treating her M.S. In support, Akridge cites to Coshatt's deposition testimony that Alfa "looked at the salary and the position responsibilities and whether we needed that or not. And obviously when we automate, those position responsibilities go away." Doc. 78-3 at 116:13–17. Coshatt agreed when asked the

following, "So you're just talking her salary and what other benefits she may have gotten as an employee." Doc. 78-3 at 116:18–21. Akridge also cites to Plaster's deposition in which he states that the decision to terminate Akridge was discussed for some time (Doc. 78-5 at 49:17–20) and that the directive to cut costs came from the President of Alfa and was communicated down the corporate structure. Doc. 78-5:12–17. Plaster stated that this was a business decision and it was "just numbers." Doc. 78-5 at 35:12–17. Chancey also testified that "it's a savings when you eliminate a job that has a salary like that," and agreed with the statement that "when you eliminate a job, you eliminate not only the salary but also any of the benefits that go with the job." Doc. 78-4 at 44:5–11.

Akridge has stated in an affidavit that in the two-year period before she was terminated, Alfa employees were verbally cautioned about rising health care costs and expenses and reminded that their costs and expenses affected employees' healthcare premiums. Doc. 129-3 at ¶ 6.

After her termination, Akridge contacted Al Dees in the marketing department to see if other jobs were available in that department. Doc. 78-2 at 85:14–86:3. Akridge says that Dees told her that he could not create a position for her. Doc. 78-2 at 9:1–13. Akridge testifies that she was not approached by Alfa about open positions.

Akridge contends that Alfa retained similarly situated employees who did not have her health care costs. Akridge states in an affidavit—which is subject to Alfa's motion to strike—that Hillary McCaleb worked on the property/home side of the underwriting department and worked with agents who were not profitable. Akridge also points to Emily Davenport and Kayla Dill as employees from the underwriting department who still work

at Alfa. Akridge further states that Becky Roper, Terry Williams, Sonya McInvale, Kim Byrum, and Brynnan Gorey retained their job duties and their salaries remained unchanged.

Akridge presents evidence that she remained insured through COBRA insurance, but that on August 3, 2017 Blue Cross and Blue Shield, the administrator of Alfa's insurance plan, wrote to Akridge and informed her that the cost of her prescription medication no longer would be covered. Doc. 126-2 at 85.

## III. STANDARD OF REVIEW

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A) & (B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## IV. DISCUSSION

Alfa has moved to strike aspects of Akridge's evidence offered in opposition to the motion for summary judgment and has moved for summary judgment on Akridge's accommodation and disability discrimination claims.

### A.    Motion to Strike

Alfa asks that in ruling on the pending motion for summary judgment the court not consider various aspects of affidavits submitted by Akridge in 2016, 2018, and 2019, as well as one affidavit submitted by Tony Bohannon. Akridge has argued that a motion to strike is not an appropriate way to seek exclusion of the evidence, and that Alfa should have objected to the evidence instead. The court will consider Alfa's arguments in its motion as objections to the admissibility of the identified portions of the affidavits and, for reasons to be discussed, will grant in part and deny in part the motion to strike.

#### 1.    *2016 Affidavit*

With respect to the 2016 affidavit, Alfa states that it is improper for Akridge to offer

opinions on the costs of her treatment relative to other employees, the reason for her termination, and the pay of other employees, including Executive Vice President Angie Bradwell. Akridge responds that her statements, even if lay opinions, are based on personal knowledge and are admissible.

Under Federal Rule of Evidence 701, which allows for the admission of lay opinions under certain circumstances, a lay opinion must be rationally based on the perception of the witness. This rule requires that the witness perceive something firsthand and "that the witness's perception provide a truly rational basis for his or her opinion." *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1265, 1273–74 (M.D. Ala. 2001) (citation omitted). An opinion is admissible only if the court determines that an adequate foundation has been established. *Id.* The court also determines whether the proffered opinion is based on personal knowledge and will be helpful to the jury. *Id.*

Akridge states that she is aware that Alfa is self-insured and that her medicine costs as much as $11,000 per month. While she offers the opinion in her affidavit that other Alfa employees "would likely not cost so much," she provides no factual basis for her knowledge of other employees' medical costs. Doc. 129-1 at ¶ 8. Therefore, the court will not consider her opinion, but will accept the factual assertions associated with that opinion—namely, the extent of her treatment costs and the fact that they that were paid by Alfa. As to Akridge's statement in the same affidavit that "it is obvious to me that I am being terminated because of my disability," there is no foundation or any factual basis for that opinion, and the court will not consider it. *See Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1026 (11th Cir. 1994) ("[A]lthough the district court noted that Sturniolo

'suspected' age discrimination at the time of his discharge, a discharged employee's mere suspicion of age discrimination, unsupported by personal knowledge of discrimination, will not constitute pretext."). A plaintiff's opinion that discrimination motivated an employment action is not an admissible lay opinion because it is not helpful in that it "merely tells the jury what result to reach." *Hamilton v. Coffee Health Grp.*, 949 F. Supp. 2d 1119, 1128 (N.D. Ala. 2013) (quoting *Hester v. BIC Corp.*, 225 F.3d 178 (2d Cir. 2000)). Finally, because Akridge acknowledges that she has no personal knowledge concerning Angie Bradwell's salary and benefits (Doc. 137 at 5), the court will consider only her factual observation in the affidavit that Bradwell received a promotion to Executive Vice President.

### 2. *2018 Affidavit*

Alfa seeks to exclude statements in Akridge's 2018 affidavit about the job duties of Scott Forrest, the employment status of various Alfa employees, and the claim that Forrest made unwanted advances toward her.[3]

Akridge states in her affidavit that Forrest "made the decisions regarding the economic feasibility of the position, the effectiveness, and necessity; then tasked with the determining which positions to eliminate. This fact was known company-wide." Doc. 129-4 at ¶ 5. Alfa argues that Akridge does not have personal knowledge of Forrest's duties or responsibilities. Akridge responds that her statements are based on personal knowledge, relying on *Sharpe v. Global Security International*, 766 F. Supp. 2d 1272 (S.D. Ala. 2011).

---

[3] While Forrest's unwanted advances would have been within Akridge's personal knowledge, this assertion lacks relevance to any issue presented by the Motion for Summary Judgment.

In *Sharpe*, a witness who worked on the same line as the plaintiff testified in an affidavit about his understanding of the work responsibilities and job titles of his fellow employees. *Id.* at 1281. The court explained that the testimony "which appears to be rationally based on the witness's perceptions" could be considered in ruling on the motion for summary judgment. *Id.* Akridge also cites *Sharpe* for the proposition that a statement by a plant manager is not hearsay. *Id.*

In the affidavit, Akridge does not establish that her statements are based on personal knowledge or explain how she could perceive Forrest's job duties. Furthermore, in the affidavit's certification and acknowledgement, she states only that her information is accurate to the best of her knowledge. Doc. 129-4 at 3. This is not sufficient. *See Tingley Sys., Inc. v. Bay State HMO Mgmt., Inc.*, 833 F. Supp. 882, 884 (M.D. Fla. 1993) ("[W]here there is a strict statutory requirement that an affidavit be based upon personal knowledge, as in rule 56(e), then an affidavit based on information and belief is insufficient."). Arkridge has not identified the source of any statement as a basis for finding that the statement qualifies as an opposing party's statement under Federal Rule of Evidence 801(d)(2). Therefore, the court cannot conclude that Akridge has stated enough facts in her affidavit to establish that her assessment of Forrest's job duties is rationally based on her own perceptions.

Alfa also objects to allegations in the 2018 affidavit that two persons in the underwriting department were placed in the marketing department, that only five persons were terminated in the cost-savings measures, and that several employees were placed in other departments as being beyond Akridge's personal knowledge and hearsay. Doc. 129-

4 at ¶ 6–7.  Akridge does not state the basis upon which she makes these statements and says in the certification that they are made to the best of her knowledge. Doc. 129-4 at 3. Accordingly, the court will not consider these statements. *See KW Plastics*, 131 F. Supp. at 1274.

### 3.    *2019 Affidavit*

In the 2019 affidavit, Akridge states, "I believe Hillery McCaleb makes a good comparator to me in the underwriting department at Alfa when I was terminated in December 2016." Alfa objects to this statement on the grounds that Akridge should not be allowed to give an opinion on a legal issue and has no personal knowledge of McCaleb's job duties.  Akridge again responds that her opinion is admissible as a lay opinion because it is rationally based on her perception.

Akridge's statement of belief is not admissible.  "A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence." *Riley v. Univ. of Ala. Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014).  Furthermore, Akridge's statement is not admissible because "comparator" is a legal conclusion that must be determined by applying the appropriate legal standard, so offering a lay opinion without applying that standard is not helpful under Federal Rule of Evidence 701(b). *See Hamilton*, 949 F. Supp. 2d at 1128 (stating that the helpfulness requirement embodied in Rule 701(b) provides assurances against the admission of opinions which would merely tell the jury what result to reach).

### 4.    *Bohannon Affidavit*

Bohannon is a former Alfa employee who worked in the marketing department.  He

comments on the circumstances of Akridge's termination in an affidavit challenged by Alfa. Alfa argues that Bohannon seeks to offer opinions of Akridge's work even though he was not a supervisor and was not involved in the decision to terminate her position. Alfa points out that Bohannon admits that he has "no specific knowledge of Scott Forrest's involvement in the termination of Jennifer Akridge." Doc. 129-5. Alfa also points out that Bohannon left employment with Alfa in December 2013, so his statements are based on inadmissible hearsay to the extent they relate to any actions occurring after that date.

Bohannon's statements that Akridge was named Alfa Employee of the Year in 1995 and that she received a grade of "Exceeds Expectations" on her evaluations may be within his personal knowledge, so the court will consider those statements. But the court agrees with Alfa that Bohannon's opinions that Akridge's termination either was personal or related to the cost of her medical expenses and that the human resources department "should have knowledge of the health care costs of every employee" have not been shown to be within his personal knowledge as an employee of the marketing department and, therefore, are improper opinions under Rule 702. The court will not consider those statements in its analysis of the motion for summary judgment. *See KW Plastics*, 131 F. Supp. 2d at 1274 (stating that a "Rule 701 witness cannot simply assert conclusions").

## B.     Motion for Summary Judgment as to the Accommodation Claim

As earlier noted, Akridge brings an accommodation claim in the complaint filed in this case. Alfa argues in its motion for summary judgment that Akridge cannot present any evidence that she requested an accommodation or that Alfa failed to provide one, and moves for summary judgment on that basis. In response, Akridge does not appear to pursue

an accommodation claim. While Akridge references an accommodation for her disability, that reference is to the accommodation of allowing the health care plan to cover a medicine Akridge used, and to her argument that Alfa ended this accommodation by terminating Akridge's employment. Doc. 130 at 33–34. This argument is offered to show Alfa's knowledge of Akridge's disability (Doc. 130 at 34) and is a component of her disability discrimination claim. *See Knight v. Gen. Telecom., Inc.*, 271 F. Supp. 3d 1264, 1286 (N.D. Ala. 2017) (noting that a claim that the defendant terminated the plaintiff to avoid an accommodation in the future is a discrimination claim, not an accommodation claim). In the absence of evidence or argument by Akridge specifically on the accommodation claim, the court concludes that the motion for summary judgment is due to be GRANTED as to this claim.

## C.    Motion for Summary Judgment as to the Disability Discrimination Claim

Akridge also brings a claim for disability discrimination, arguing that she was terminated from her position because Alfa did not want to incur the expense of her treatments for M.S. Alfa moves for summary judgment stating that Akridge cannot show that she was terminated because of a disability and, therefore, cannot prove a claim of disability discrimination using the burden-shifting method of proving discrimination through circumstantial evidence. In response, Akridge argues that she has presented sufficient circumstantial evidence, but also claims that she has presented sufficient evidence of a direct evidence claim and a circumstantial evidence mixed-motive claim for her claims to survive summary judgment. The court will begin with the direct evidence claim.

### 1. Direct Evidence of Discrimination

Direct evidence of disability-based discrimination is evidence that, if believed, proves the existence of a fact in issue without inference or presumption. *Roberts v. Design & Mfg. Servs., Inc.*, 167 F. App'x 82, 84–85 (11th Cir. 2006). Evidence that only suggests discrimination or that is subject to more than one interpretation is not direct evidence. *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997). "Only the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination." *Carter v. Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

In support of her direct evidence claim, Akridge argues that Alfa had been accommodating Akridge since 1993 by covering the cost of her medication. Akridge cites to evidence that Alfa no longer covered the cost of her medication after she was on COBRA insurance. Akridge also points to the deposition testimony of the decisionmakers, such as Coshatt's response of "right," to the following question: "So you're just talking her salary and what other benefits she may have gotten as an employee." Doc. 78-3 at 116:18–21. Akridge also cites to Plaster's deposition in which he states that the decision to terminate Akridge was discussed for some time (Doc. 78-5 at 49:17–20), and that the directive to cut costs came from the President of Alfa. Doc. 78-5:12–17. Plaster also stated that it was a business decision and was "just numbers." Doc. 78-5 at 35:12–17. Chancey testified that "it's a savings when you eliminate job that has a salary like that," and agreed with the statement that "when you eliminate a job, you eliminate not only the salary but also any of the benefits that go with the job." Doc. 78-4 at 44:5–11.

None of this evidence, however, is direct evidence of discrimination since it is not evidence for which the intent could be nothing other than to discriminate. *See, e.g., Beatty v. Hudco Indus. Prod., Inc.*, 881 F. Supp. 2d 1344, 1354 (N.D. Ala. 2012) (finding that decisionmaker's remark that he was paying a lot of money to the plaintiff and wondered if it was justified given her condition was not direct evidence). At most, there is evidence of a consideration of benefits, which requires an inference or presumption to link it to disability and, therefore, is not direct evidence. *Id*. Summary judgment is due to be GRANTED as to the direct evidence theory advanced by Akridge.

## 2. *Circumstantial Evidence of Discrimination*

To prove a circumstantial evidence claim of disability discrimination, a plaintiff may show that (1) she has a disability under the ADA, (2) she is a qualified, and (3) she was the recipient of unlawful discrimination because of her disability. *See Rossbach v. City of Miami*, 371 F.3d 1354, 1356–57 (11th Cir. 2000). The third prong is sometimes described as requiring proof of "an adverse employment action because of [her] disability (*i.e.*, that [s]he has suffered employment discrimination)." *Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1445 (11th Cir. 1998).[4] Alfa presumes for purposes of the motion for summary judgment that Akridge is a qualified person who suffers from a disability within the meaning of the ADA. Doc. 130 at 23.[5]

---

[4] The court notes the criticism in cases such as *Brandon v. Lockheed Martin Aeronautical Systems*, 393 F. Supp. 2d 1341, 1345–46 (N.D. Ga. 2005), of the current formulation of the traditional disability discrimination *prima facie* case.

[5] Although the parties have not argued for its application, there is another formulation of the *prima facie* case which may apply when a plaintiff is discharged as part of a reduction in force. Under that formulation, the plaintiff must show (1) that she is a member of a protected class, (2) that she was terminated, (3) that she was qualified for another position at the time of termination, and (4) that the employer intended to

The final element of a traditional *prima facie* case of disability discrimination can be established by demonstrating that the plaintiff was replaced by someone outside of her protected category, *Harris v. H&W Contr. Co.*, 102 F.3d 516, 524 (11th Cir. 1996), or that she was treated differently than a similarly situated person outside of the category. *Hill v. Branch Banking & Trust Co.*, 264 F. Supp. 3d 1247 (N.D. Ala. 2017); *see also Lewis v. Zilog, Inc.*, 908 F. Supp. 931, 951 (N.D. Ga. 1995) (holding that a plaintiff may show that she was discharged while her employer retained a person outside the protected class with equal or less qualifications or with equal or more performance problems). A plaintiff also may present circumstantial evidence to create a triable issue concerning the employer's discriminatory intent. *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.

---

discriminate in failing to consider the plaintiff for another position. *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs.*, 47 F.3d 1068, 1073 (11th Cir. 1995). Although the parties do not address this formulation, they do advance arguments and present evidence that Akridge sought another position at Alfa after her termination.

"Both methods of analysis require some proof of discriminatory intent." *Thomas v. Wal-Mart Stores, Inc.*, 1999 WL 642235, at *2 (S.D. Ala. Jan. 7, 1999), *aff'd*, 210 F.3d 393 (11th Cir. 2000). In an abundance of caution, the court will analyze this theory here. "Where a particular job position is entirely eliminated for nondiscriminatory reasons, for a plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Archie v. Home-Towne Suites, LLC*, 749 F. Supp. 2d 1308, 1319 (M.D. Ala. 2010).

Alfa contends that Akridge did not apply for any other positions with Alfa after her position was terminated. Akridge disputes that she did not seek another position at Alfa, arguing that Alfa did not offer her any other positions. She testified in her deposition that the human resources department did not instruct her that she could apply for a position. Doc. 78-2 at 83:9–84:5. In her response in opposition to Alfa's motion to strike, Akridge claims that Alfa's failure to address her ability to apply for other positions was "in direct contradiction to its policy and practice provided other Alfa employees" (Doc. 137 at 4), but she does not cite the court to any evidence of a policy to this effect. Akridge does present evidence that she inquired of Dees whether there was a position in the marketing department. Akridge admitted in her deposition, however, that she did not formally apply for any positions at Alfa. Doc. 78-2 at 10:4–8. And Plaster testified in his deposition that there were no available jobs in the underwriting department. Doc. 78-5 at 78:6–12. In the absence of evidence establishing that the requirement that Akridge apply for a position was contrary to policy, and given affirmative evidence that Akridge did not apply for any positions, the court cannot conclude that Akridge has created a question of fact sufficient to survive summary judgment under this formulation of a *prima facie* case.

2011).

Akridge does not contend that she was replaced by someone without a disability. She argues instead that she was treated differently than a similarly situated, non-disabled employee. Akridge points to employees Kayla Deal and Emily Davenport. In response, Alfa presents evidence that these two employees worked for the underwriting department on a specific project, but were actually assigned to the marketing department, not the underwriting department, and had different duties than Akridge. Doc. 78-3 at 50:12–22.

Akridge also points to Becky Roper, Kim Byrom, Brynan Goray, Teri Williams, and Sonya McInvale, stating that they retained their salaries and were reduced "to lower levels." Doc. 78-2 at 13–14. Alfa presents evidence indicating that Becky Roper, Kim Byrom, Brynan Goray, Teri Williams, and Sonya McInvale continued to work in the underwriting department and their job duties remained the same, but their titles were realigned to match the actual responsibilities of their jobs. Doc. 78-4 at 40–41. Chancey contrasted this situation with Akridge's, describing them as "totally different" because the other employees continued to perform the same job duties, while Akridge's job was eliminated because some of her functions became automated and the remaining duties were assigned to other people on the team. Doc. 78-4 at 41:3–14. Plaster also testified in his deposition that these retained employees differed from Akridge because the majority of Akridge's job became automated. Doc. 78-5 at 43:9–21.

Alfa argues that even accepting that there were some job tasks of Akridge's which had not become completely automated and had to be reassigned, it is not the province of the court to determine which duties could be reassigned. Instead, Alfa argues, Akridge and

the other employees were not similarly situated because the majority of Akridge's duties became automated.

A plaintiff must establish that her comparators are "similarly situated in all relevant aspects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). The court finds that the difference in departments as to Kayla Deal and Emily Davenport, and the difference in job duties for all of these identified employees, as well as the evidence that only Akridge's job duties were eliminated by automation, means that these employees were not similarly situated to Akridge in all relevant respects. *See, e.g., Foster v. Biolife Plasma Servs., LP*, 566 F. App'x 808, 812 (11th Cir. 2014) (holding that an employee who "worked in a different department than [plaintiff], with different job duties" is not similarly situated in all relevant respects).

Akridge also points to McCaleb as a comparator.[6] Akridge acknowledges that she worked on the automobile side of the underwriting department while McCaleb worked on the property/home side, but she argues that their job responsibilities were the same. Alfa argues in response that Akridge and McCaleb were in different departments with different job titles and supervisors, and that McCaleb was assigned certain special projects with different responsibilities from Akridge. Doc. 78-3 at 108:19–23. Coshatt testified in his deposition that the automobile side, where Akridge worked, was fully automated through the strategic underwriting program. Doc. 78-3 at 106:3–11. Coshatt explained that Akridge's position responsibilities went away because Alfa was able to automate the

---

[6] As noted in connection with the Motion to Strike, the court has determined that it cannot consider Akridge's statement in her affidavit that she personally believes that McCaleb is an appropriate comparator.

responsibilities on the automobile side. Doc. 78-3 106:21–23. Coshatt acknowledged that the homeowner side has become more automated, but not to the same extent as the automobile side. Doc. 78-3 at 106:12–16. And Chancey testified in her deposition that at the time of Akridge's termination, Akridge and McCaleb did not have overlapping job responsibilities. Doc. 78-4 at 47:1–11. She explained that after the reorganization the underwriters at Alfa underwrite both homeowner and automobile policies, but at the time of her termination Akridge's work was confined to automobile policies and McCaleb was limited to homeowner policies. Doc. 78-4 at 47.

In view of Alfa's affirmative evidence establishing the differences between the positions of Akridge and McCaleb, and specifically showing that Akridge's job duties became more automated than McCaleb's, the court concludes that Akridge has not created a sufficient question of fact as whether she and McCaleb were similarly situated in all relevant respects. *Holifield*, 115 F.3d at 1562. Akridge's argument with respect to McCaleb appears to be that Akridge was an exemplary employee and could have been retained by Alfa because she could have done the job responsibilities that McCaleb was performing after automation removed Akridge's responsibilities. That argument does not, however, establish that Akridge and McCaleb were similarly situated, and Akridge cites no authority holding that the ADA would require Alfa to retain Akridge under those circumstances. *Cf. Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995), for the proposition that the ADA does not require an employer to reassign an employee to an occupied position). The court

concludes that Akridge has not presented sufficient evidence of a comparator similarly situated in all relevant respects.

However, Akridge does not rely entirely on comparator analysis. She also has argued that even without comparator evidence a plaintiff may establish a *prima facie* case with "other evidence of discrimination." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1277 (11th Cir. 2008). Akridge additionally argues that she can prove a mixed-motive claim through circumstantial evidence. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016) (holding that a mixed motive claim requires evidence sufficient to convince a jury that (1) the defendant took an adverse employment action against the plaintiff, and (2) a protected characteristic was a motivating factor for the defendant's adverse employment action).

Because both circumstantial evidence theories require a showing of intent to discriminate,[7] the court turns to Akridge's evidence of intent. *See, e.g., Quigg*, 814 F.3d at 1241 (stating that an "employee challenging a decision made by a board can succeed on a mixed-motive claim if she demonstrates that 'discriminatory input' . . . factored into the board's 'decisional process'").

Akridge cites to testimony by the decisionmakers in their depositions to show

_____

[7] Alfa does not argue that a mixed-motive circumstantial evidence claim cannot be brought pursuant to the ADA. The Eleventh Circuit relied on the Sixth Circuit's formulation of a mixed-motive analysis in *Quigg*. 814 F.3d at 1239. In the Sixth Circuit, a mixed-motive claim cannot be brought pursuant to the ADA, which that circuit has concluded requires "but for" causation. *Lewis v. Humboldt Acq. Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (holding that the "ADEA and the ADA bar discrimination 'because of' an employee's age or disability, meaning that they prohibit discrimination that is a 'but-for' cause of the employer's adverse decision"). The Eleventh Circuit held in *McNely v. Ocala Star–Banner Corporation*, 99 F.3d 1068, 1077 (11th Cir. 1996), that a "motivating factor" standard applies. Although that decision was before the Supreme Court's decision in *Gross v. FBL Financial Services, Incorporated*, 557 U.S. 167 (2009), the court follows this holding of the Eleventh Circuit.

evidence of an intent to discriminate. The court previously addressed this testimony in connection with Akridge's direct evidence theory. As summarized above, Coshatt testified in his deposition as follows:

> Q: And can you tell me how much expense, if any, you reduced by eliminating the strategic coordinator position that Jennifer Akridge had?
> A: Her—we certainly looked at the salary and the position responsibilities and whether we needed that or not. And obviously, when we automate, those position responsibilities go away.
> Q: So you're just talking her salary and what other benefits she may have gotten as an employee?
> A: Right.

Doc. 78-3 at 116:18–21. Plaster testified that the decision to terminate Akridge was discussed for some time (Doc. 78-5 at 49:17–20), and that the directive to cut costs came from the President of Alfa. Doc. 78-5:12–17. Plaster also stated that it was a business decision and "just numbers." Doc. 78-5 at 35:12–17. Chancey testified that "it's a savings when you eliminate job that has a salary like that," and agreed with the statement that "when you eliminate a job, you eliminate not only the salary but also any of the benefits that go with the job." Doc. 78-4 at 44:5–11.

Alfa argues that this testimony merely shows that the decisionmakers considered the need for a position, and the salary and benefits of that position, if the responsibilities of the job had been automated. Alfa is correct that none of this testimony shows that a decisionmaker considered any of Akridge's health care costs. In fact, Coshatt stated in his deposition that he has no knowledge of any employee's health care costs to the organization. Doc. 78-3 at 51:20–52:14. Chancey testified in her deposition that she knew that Akridge had M.S. but she affirmatively testified that the decisionmakers did not take

health care costs into consideration and did not know what those costs were. Doc. 78-4 at 68:8–10. Plaster also testified that he did not have any knowledge of health care costs. Doc. 78-5 at 76:10–11. Ultimately, Akridge has demonstrated only that the decisionmakers were aware that eliminating a position pursuant to a corporate restructuring would achieve savings by eliminating the salary and the benefits associated with filling that position. Akridge has developed no evidence, however, that decisionmakers Coshatt, Chancey, and Plaster were aware of the costs of any medical treatment she or any other employee incurred.

Other courts examining analogous evidence have concluded that a lack of evidence of knowledge of the plaintiff's specific health care costs means that the decisionmaker did not consider a plaintiff's disability in the decision. *See Giles v. Transit Employees Fed. Credit Union*, 794 F.3d 1, 10–11 (D.C. Cir. 2015) (holding that no reasonable jury could conclude that the real reason for plaintiff's discharge was that medical expenses were driving up insurance premiums when there was no evidence that the employer knew what the plaintiff's treatment cost was or that a decisionmaker thought that her medical costs caused premiums to increase); *see also Libel v. Adv. Lands of Am., Inc.*, 482 F.3d 1028, 1034 (8th Cir. 2007) (upholding summary judgment and stating that, even assuming that termination was linked to concerns of rising insurance costs, "no evidence, direct or circumstantial, links [the] termination to [the plaintiff's] M.S. and rising insurance costs"). This court is persuaded by that analysis. In this case, there is affirmative evidence that Coshatt, Plaster, and Chancey were not aware of Akridge's health care costs, or other employees' health care costs. The fact that Alfa was self-insured and that Alfa's

management team wanted to control costs is not sufficient to call that evidence into question. Accordingly, this court cannot conclude that a reasonable jury could infer from the decisionmakers' testimony that Akridge's disability was a consideration in the decision to eliminate her position. The court concludes, therefore, that whether viewed as offered in support of a single or mixed-motive circumstantial evidence claim, Akridge's evidence is not sufficient to create a genuine issue of material fact as to intent to discriminate. Summary judgment is due to be GRANTED as to her disability discrimination claim.

## V. CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1.      The Motion for Summary Judgment filed by Defendant Alfa Mutual Insurance Company (Docs. 76 & 126) is GRANTED.

2.      The Motion to Strike (Doc. 134) is GRANTED in part and DENIED in part, as set forth above.

A separate Final Judgment will be entered.

DONE this 20th day of February, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE